**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**


| | |
|---|---|
| MARIE-THERESE H. ASSA'AD-FALTAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )        1:14CV678 |
| | ) |
| TANDY CARTER, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the Court on Plaintiff's Motion for
Leave to Proceed *in forma pauperis* (Docket Entry 1), filed in
conjunction with her pro se Complaint (Docket Entry 2) and Motion
for Leave to File Electronically (Docket Entry 4).  For the reasons
that follow, the Court will permit Plaintiff to proceed as a pauper
solely to allow consideration of a recommendation of dismissal.

## I.  Legal Background

"The federal *in forma pauperis* statute, first enacted in 1892
[and now codified at 28 U.S.C. § 1915], is intended to guarantee
that no citizen shall be denied access to the courts solely because
his poverty makes it impossible for him to pay or secure the
costs." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th
Cir. 1995) (en banc) (internal quotation marks omitted).
"Dispensing with filing fees, however, [is] not without its
problems. . . .  In particular, litigants suing in forma pauperis
d[o] not need to balance the prospects of successfully obtaining

relief against the administrative costs of bringing suit." <u>Nagy v. Federal Med. Ctr. Butner</u>, 376 F.3d 252, 255 (4th Cir. 2004).  To address this concern, the in forma pauperis ("IFP") statute provides that "the court shall dismiss the case at any time if the court determines . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

As to the first of these grounds, the United States Supreme Court has explained that "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989).  In assessing such matters, this Court may "apply common sense." <u>Nasim</u>, 64 F.3d at 954; <u>see also</u> <u>Nagy</u>, 376 F.3d at 256-57 ("The word frivolous is inherently elastic and not susceptible to categorical definition." (internal quotation marks omitted)).  Coordinately, "[a] complaint plainly abusive of the judicial process is properly typed malicious." <u>Crisafi v. Holland</u>, 655 F.2d 1305, 1309 (D.C. Cir. 1981); <u>accord</u> <u>Davis v. Shekita</u>, No. 5:12CV504H, 2014 WL 2505485, at *3 (E.D.N.C. June 3, 2014) (unpublished); <u>Galeas v. Byrd</u>, No. 3:11CV543RJC, 2011 WL 6370373, at *3 (W.D.N.C. Dec. 20, 2011) (unpublished), <u>aff'd</u>, 469 F. App'x 236 (4th Cir. 2012); <u>see also</u> <u>Cain v. Virginia</u>, 982 F. Supp. 1132, 1136 (E.D. Va. 1997) ("[C]omplaints which merely repeat

previously litigated claims may be dismissed as malicious. However, maliciousness is not confined to such a narrow class of complaints. A litigant may be deemed to act maliciously if his actions import a wish to vex, annoy, or injure another, or an intent to do a wrongful act, and may consist in direct intention to injure, or in reckless disregard of another's rights." (internal brackets, citations, and quotation marks omitted)).

Alternatively, a plaintiff "fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915(e)(2)(B)(ii), when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.[1]

---

[1] Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v.
(continued...)

The third ground for dismissal under 28 U.S.C. § 1915(e)(2)(B) generally applies to situations in which doctrines established by the United States Constitution or at common law immunize governments and/or government personnel from liability for damages. See, e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984) (discussing sovereign immunity of states and state officials under the Eleventh Amendment); Pierson v. Ray, 386 U.S. 547 (1967) (describing interrelationship between 42 U.S.C. § 1983 and common-law immunity doctrines); cf. Allen v. Burke, 690 F.2d 376, 379 (4th Cir. 1982) (noting that, even where "damages are theoretically available under [certain] statutes . . ., in some cases, immunity doctrines and special defenses, available only to public officials, preclude or severely limit the damage remedy").

## II.  Plaintiff's Complaint

Plaintiff's Complaint alleges that she "was falsely arrested and imprisoned . . . by the City of Columbia and Richland County

---

[1](...continued)
Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681–82 (D.C. Cir. 2009) ("A pro se complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.'  But even a pro se complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 679, respectively)).

4

Sheriff's Department [and that] . . . [i]n the process of defending herself, [she] discovered extreme corruption, criminality and/or unconstitutionality in South Carolina state government and its subdivisions . . . ." (Docket Entry 2 at 2.) As a result, Plaintiff seeks monetary and non-monetary relief from (according to the Complaint's caption) over 100 Defendants, including the United States Attorney for the District of South Carolina, the State of South Carolina, South Carolina's Governor, South Carolina's Attorney General, South Carolina's General Assembly, South Carolina's Judicial Merit Selection Commission ("JMSC"), South Carolina's Supreme Court Chief Justice and Clerk, South Carolina's Court of Appeals Clerk and Deputy Clerk, the Sheriff of Richland County, South Carolina, his Department ("RCSD"), and several of his Deputies, the Mayor, City Council, and Assistant City Manager of Columbia, South Carolina, the Columbia Police Department ("CPD") and 20 or more CPD officers, as well as numerous judges and prosecutors in Richland County and Columbia. (Id. at 1-2).

Consistent with the large number of governmental bodies and high-ranking officials named as Defendants, the Complaint demands declaratory and injunctive redress on an epic scale. (See id. at 26 (requesting that the Court "declare any bond condition preventing a criminal defendant from returning to the only home she has as per se violative of the Eighth Amendment . . . [and] a right to immediate evidentiary hearing for every criminal defendant who

has evidence that the Prosecution intends to use falsehoods against her"), 29 (proposing that the Court "hold South Carolina's harassment and stalking statute and unlawful use of a telephone statute, as well as bond procedures wherein the alleged victim is not sworn or cross-examined all unconstitutional"), 31 (seeking a "find[ing] that CPD has become a crime syndicate and should be dissolved immediately with all its members retrained before any of them applies to be rehired by the to-be-newly-constituted unified County law enforcement force"), 62 (praying that the Court "order [the Sheriff of Richland County] to establish and maintain a separate and safe detention facility for [Richland County's] female detainees with all due dispatch"), 64 (asking the Court "to hold JMSC unconstitutional on its face and as applied to Plaintiff and her class, to order JMSC dissolved, and to replace [South Carolina's] peculiar system of election of judges with one of popular election or election of new judges and retention of sitting judges upon the nomination and vote of the sitting judiciary, and not any other branch of government, with impeachment preserved").)

However, despite such grand objectives, by its express terms:

This Complaint addresses **only:** (a)(i) the **Wednesday, 2 December 2009**, false arrest of Plaintiff on two false charges of harassment "in the first degree" of which she was fully and finally exonerated in September/October 2012 and (a)(ii) all robbery and ransacking of Plaintiff's apartment and car that day under invalid search and seizure warrants and procedures; (b)(i) the false arrest of Plaintiff on **Saturday, 12 December 2009**, on false charge of "unlawful use of telephone" which was resolved in her favor on 6 October 2010, and (b)(ii)

Defendants' continued efforts to bring that false charge to trial until July 2012 and March 2013; and (c)(i) Plaintiff's **23 March 2011** false arrest by RCSD on false charge of "trespass" unto the public courthouse, and (c)(ii) the continued unjustified denial of Plaintiff's access to the Richland County courthouse and to the CMC [Columbia Municipal Court] building and the services both offer to the public.

Claims for any and all acts of other entities . . . and for any and all other acts of [D]efendants . . . **are expressly reserved for other complaints** . . . .

(Id. at 3-4 (bold in original); see also id. at 6-32 (setting out 245 paragraphs of allegations under heading "The False Arrest and Imprisonment on the False Harassment Charges"), 32-50 (setting out 57 paragraphs of allegations and incorporating 15 pages of purported transcript excerpts under heading "The Saturday, 12 December 2009 False Arrest on False Charges of Unlawful Use of Telephone"), 50-62 (setting out 65 paragraphs of allegations under heading "The False 23 March 2011 Arrest, Imprisonment, and Deliberate Indifference to Medical Needs"), 62-64 (setting out 18 paragraphs of allegations under heading "South Carolina's Unconstitutional Judicial Systems"), and 64-70 (setting out 35 paragraphs of allegations under heading "Motion for Injunction against [South Carolina's Supreme Court Chief Justice] in her Administrative Capacity").)[2]

_____

[2] The Complaint's above-referenced final two sections (Docket Entry 2 at 62-70) seek injunctive relief disconnected from the substance of the claims identified by the Complaint as the exclusive focus of this action (compare id., with id. at 3-4, 6-62). This Memorandum Opinion therefore will not address those
(continued...)

## III. Plaintiff's Prior Closely-Related Litigation

The Complaint acknowledges that Plaintiff previously pursued relief for the above-identified events, but emphasizes that "[n]one of the causes of action herein was previously dismissed with prejudice." (Id. at 3 (emphasis in original).) In fact, the United States District Court for the District of South Carolina has reviewed most (if not all) of Plaintiff's instant claims and has found them legally deficient and/or frivolous (although it nonetheless dismissed such claims without prejudice); specifically:

1) in Assa'ad-Faltas v. City of Columbia, SC, No. 3:13CV2715, 2013 U.S. Dist. LEXIS 188115 (D.S.C. Nov. 1, 2013) (unpublished), recommendation adopted, 2014 U.S. Dist. LEXIS 87526 (D.S.C. June 26, 2014), the district court accepted the recommendation of "summary dismissal" of claims that a CPD officer "illegally arrested [Plaintiff] on December 12, 2009, for unlawful use of a telephone," as well as that the defendants unlawfully "'continued efforts to bring that false charge to trial until July 2012 and March 2013,'" Assa'ad-Faltas, 2013 U.S. Dist. LEXIS 188115, at *10-13 (quoting paragraph four of Plaintiff's complaint in said case)),

---

[2](...continued)
relief requests because "[the Fourth Circuit] will vacate an injunction if it . . . does not carefully address only the circumstances of the case." PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 128 (4th Cir. 2011) (internal quotation marks omitted) (emphasis added); see also Hayes v. North State Law Enforcement Officers Ass'n, 10 F.3d 207, 217 (4th Cir. 1993) ("[I]njunctive relief . . . should not go beyond the extent of the established violation.").

although the district court effected the dismissal of the entire action (and thus the foregoing claims) without prejudice, Assa'ad-Faltas, 2014 U.S. Dist. LEXIS 87526, at *3;[3]

2) in Assa'ad-Faltas v. Richland Cnty. Sheriff's Dep't, No. 3:13CV1629, 2013 WL 5273817 (D.S.C. Aug. 26, 2013) (unpublished), a United States Magistrate Judge, considering Plaintiff's claims for damages and injunctive relief, inter alia, because (A) a South Carolina circuit court judge "issued a 'bizarre' order on April 1, 2010, limiting Plaintiff's access to the RCJC [Richland County Judicial Center]," id. at *1, (B) another such judge later "concurr[ed] with th[at] order," id. at *2, and (C) on March 23, 2011, RCSD deputies arrested Plaintiff for trespassing at the RCJC, id., concluded that said circuit court judges "[we]re entitled to summary dismissal . . . [of] claims [for damages and injunctive relief] associated with their judicial actions to include the issuance of orders," id. at *4, and that Plaintiff's claim(s) related to her trespassing arrest failed under Federal Rule of Civil Procedure 8(a), id. at *6, whereafter the district court agreed with those conclusions and dismissed the action (albeit again without prejudice) and the Fourth Circuit affirmed, Assa'ad-Faltas v. Richland Cnty. Sheriff's Dep't, No. 3:13CV1629, 2013 WL

---

[3] The caption of Plaintiff's Complaint in this Court includes as Defendants approximately two dozen entities and individuals also so-named in the above-cited case. (Compare Docket Entry 2 at 1-2, with Assa'ad-Faltas, No. 3:13CV2715, Docket Entry 1 at 1.)

5273813 (D.S.C. Sept. 17, 2013) (unpublished), aff'd, ___ F. App'x

___, 2014 WL 2199375 (4th Cir. May 28, 2014) (unpublished);[4]

3) in Assa'ad-Faltas v. Toal, No. 3:12CV2991 (D.S.C.), Docket

Entry 1, Plaintiff alleged that she "was falsely arrested on 2

December 2009 on false charges of harassment in the first degree,"

id. at 1, and that, "on 23 March 2011, [a RCSO deputy] also falsely

arrested [her] on false charges of 'trespass after notice,'" id. at

2; however, after "carefully review[ing] [] [P]laintiff's claims

. . ., [the district] [c]ourt f[ound] it apparent and clear from

the face of the complaint that [P]laintiff fail[ed] to state a

claim on which relief may be granted, and, in addition, that

[P]laintiff's allegations in the above-captioned case [we]re

frivolous," Assa'ad-Faltas v. Toal, No. 3:12CV2991, Docket Entry 62

(D.S.C. Apr. 16, 2013) (unpublished) (dismissing action without

prejudice), aff'd, 546 F. App'x 286 (4th Cir. 2013).[5]

## IV.  Plaintiff's Broader Litigation History

The foregoing cases represent only a small fraction of

Plaintiff's prodigious record of pro se litigation.  A search of

---

[4] In ordering that dismissal, the district court adopted the Magistrate Judge's recommendation, except as to the proposed granting to Plaintiff of leave to file a second amended complaint asserting claims against the RCSD deputies involved in Plaintiff's trespassing arrest.  See Assa'ad-Faltas, 2013 WL 5273813, at *2-3.

[5] Plaintiff named about two dozen of the individuals and entities that appear as Defendants in the caption of her Complaint here in the above-cited case as well.  (Compare Docket Entry 2 at 1-2, with Assa'ad-Faltas, No. 3:12CV2991, Docket Entry 1 at 1.)

the PACER database revealed that, from 1987 to 2009, she commenced approximately a dozen federal actions and two dozen federal appeals and that, remarkably, from 2010 to the present, she instituted more than two dozen additional federal actions and more than two dozen additional federal appeals.  See https://pcl.uscourts.gov (search for Plaintiff's name) (last performed Aug. 22, 2014).  Moreover, judicial decisions show that Plaintiff repeatedly has abused the litigation process (both in state and federal courts); for example:

1) in Assa'ad v. Thomas, 87 N.C. App. 276, 277-79, 360 S.E.2d 503, 504-05 (1987), the court (while affirming the directed verdict entered against Plaintiff on her medical malpractice claim) declared that "Plaintiff ha[d] failed to follow the Rules of Appellate Procedure . . . , she ha[d] attempted to advance many immaterial and irrelevant arguments . . . [,and she had identified] no evidence in the record as to what th[e] defendant did or failed to do in performance of duties to [P]laintiff";

2) in Assa'ad-Faltas v. Virginia, 738 F. Supp. 982, 985-87 (E.D. Va. 1989), aff'd, Nos. 89-3283, 89-3302, 902 F.2d 1564 (table), 1990 WL 64620 (4th Cir. July 2, 1990) (unpublished), the district court (in addition to dismissing Plaintiff's federal claims and declining to exercise jurisdiction over related state claims) "considered [her] motion in support of sanctions against [the] defendants and her motion for transfer or change of venue . . . [and] f[ound] that both of th[o]se motions [we]re frivolous";

11

3) in <u>Assa'ad v. John Umstead Hosp.</u>, No. 1:87CV465, Docket Entry 220 (M.D.N.C. Aug. 15, 1989) (unpublished), United States Magistrate Judge P. Trevor Sharp ordered expense-shifting and sanctions against Plaintiff during the discovery phase;

4) in <u>Assa'ad-Faltas v. University of S.C.</u>, 971 F. Supp. 985, 988-91 (D.S.C. 1997), the district court (per now-United States Circuit Judge Dennis W. Shedd) ruled that, "in th[o]se proceedings, as well as at least one other [then] before th[e] [c]ourt, [Plaintiff] ha[d] waged an aggressive (and abusive) attack," that she failed to properly respond to court-directives designed to determine whether she should retain IFP status, and "that allowing [her] to proceed IFP . . . clearly does not promote the interests of justice but, instead, contributes to the problems in our legal system that are associated with IFP litigation";[6]

---

[6] In that (and prior) cases, "[Plaintiff] did not complete the standard IFP application but, instead, filed a 'motion for leave to proceed IFP.'" <u>Assa'ad-Faltas</u>, 971 F. Supp. at 988 n.4. She did the same thing in this case. (Docket Entry 1 at 1.) As Judge Shedd observed in the case before him, "the information contained in [Plaintiff's] motions is not as detailed as that required by the standard IFP application," <u>Assa'ad-Faltas</u>, 971 F. Supp. at 988 n.4. (<u>See</u> Docket Entry 1 at 1.) Perhaps most notably, Plaintiff's instant Motion for Leave to Proceed IFP does not disclose property she owns or its value (<u>see</u> <u>id.</u>), but her Complaint clearly acknowledges ownership of property in which Plaintiff anticipates investing substantial resources (<u>see, e.g.</u>, Docket Entry 2 at 18 ("[O]n 12 March 2009 [Plaintiff's] mother and [Plaintiff] bought a small parcel adjacent to [her landlord's] two quadriplexes . . . and on it [Plaintiff] plans to build . . . [a] completely solar house.")). Nonetheless, given the recommendation of dismissal, the Court need not investigate further Plaintiff's showing of poverty.

5) in <u>Assa'ad-Faltas v. University of S.C.</u>, Nos. 96-2159, 97-1243, 165 F.3d 910 (table), 1998 WL 792209, at *1 (4th Cir. Nov. 16, 1998) (unpublished), Plaintiff appealed the "dismissal of her civil action for abuse of the discovery process," but the Fourth Circuit held that her "repeated failures to produce documents and comply with discovery orders, combined with her demeanor during her deposition, fully warranted the sanction of dismissal";

6) in <u>Koon v. Fares</u>, 666 S.E.2d 230, 233-34, 379 S.C. 150, 155-57 (2008), while affirming entry of summary judgment against Plaintiff and her mother in a landlord-tenant case, the South Carolina Supreme Court noted that the construction of the lease advocated by Plaintiff and her mother would have led to an "absurd result," that Plaintiff and her mother sought "to take advantage of [their] [l]andlord's generosity" during the dispute, and that Plaintiff and her mother made "completely unfounded" allegations of bias against the circuit court judge who handled the case; and

7) in <u>Assa'ad-Faltas v. Regional Postal Inspector</u>, No. 3:12CV463, 2012 WL 3308107, at *1-2 (W.D.N.C. Aug. 13, 2012) (unpublished), the district court construed Plaintiff's complaint as "seek[ing] redress stemming from civil and criminal judgments obtained against her and negative experiences with state and local officials in the City of Columbia . . . [as well as] various injunctive and declarative relief against the State of South Carolina, including changes to its general laws, election laws, and

its court system . . . [, and ruled that her] claims [we]re largely frivolous and/or malicious, and [she] fail[ed] to state a claim."

## V.  Section 1915(e)(2)(B) Analysis

Consistent with her prior litigation history,[7] Plaintiff's Complaint represents an abuse of the court system, in that it presents frivolous and malicious allegations, it fails to state a claim, and it targets Defendants with immunity, all of which circumstances require dismissal, see 28 U.S.C. § 1915(e)(2)(B).

### A.  Overarching Frivolous/Malicious Aspects of this Action

For purposes of Section 1915(e)(2)(B), an action's frivolity or maliciousness may arise from a number of circumstances.  See, e.g., Nagy, 376 F.3d at 256-57; Cain, 982 F. Supp. at 1136.  In this case, several matters pertaining to the Complaint as a whole render it frivolous and malicious.

#### i.  Legal Frivolousness/Maliciousness

In the first instance, the Complaint's venue allegations qualify as legally frivolous.  By statute:

A civil action may be brought in--

---

[7] The above-cited rulings adverse to Plaintiff and the related criticisms of her litigation conduct conclusively refute the Complaint's assertion "that [she] has been a highly successful *pro se* advocate whose legal skills and decorum have been praised by all judges before who she advocated except [D]efendants herein who are City employees" (Docket Entry 2 at 70).  Moreover, the Court properly may consider Plaintiff's documented history of abusive litigation, because "[a] plaintiff's past litigious conduct should inform a district court's discretion under § 1915[(e)(2)(B)]." Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996) (en banc).

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b); see also IHFC Props., LLC v. APA Mktg., Inc., 850 F. Supp. 2d 604, 615 (M.D.N.C. 2012) (Schroeder, J.) ("The burden is on the plaintiff to establish . . . venue in the judicial district where the action is brought."); Hickey v. St. Martin's Press, Inc., 978 F. Supp. 230, 240 (D. Md. 1997) ("[I]n a case involving multiple defendants and multiple claims, the plaintiff bears the burden of showing that venue is appropriate as to each claim and as to each defendant.").

Plaintiff's Complaint alleges no facts establishing proper venue over all claims and all Defendants under Section 1391(b), but instead asserts, in relevant part, as follows:

> 1. Venue is proper herein as the lead defendants, upon information and belief, reside in this district and all other defendants who reside in, or have a principal place of business in, South Carolina also transact substantial business in North Carolina and with the federal government and thus may be sued here.
>
> 2. To the extent the state of South Carolina is sued for injunctive relief, venue is still proper in this Court as South Carolina transacts substantial business in North Carolina, including riparian reallocation. Please see,

15

> South Carolina v. North Carolina, before the U.S. Supreme
> Court (voluntarily dismissed).

(Docket Entry 2 at 5; see also id. at 1-2 (describing two of 100-plus Defendants as "North Carolina resident[s]" and two additional Defendants as "North Carolina substantial property owners").)

Plaintiff cannot rely on the allegation that two Defendants reside in this district to support venue for her Complaint here, because any particular defendant's residence in a district provides a basis for venue over other defendants only if all defendants in the case reside in the same state, see 28 U.S.C. § 1391(b)(1), and (as quoted above) the Complaint acknowledges that numerous individual Defendants reside in South Carolina.[8] Reliance on any Defendant's "transacting" of "substantial business" in North Carolina similarly falls short, because, although such

---

[8] As previously noted, the Complaint's caption identifies the United States Attorney for the District of South Carolina as a Defendant (apparently in his official capacity (see Docket Entry 2 at 2)) and "[a] civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity . . . may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides," 28 U.S.C. § 1391(e)(1); however, "[a]dditional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party," id. Accordingly, although Plaintiff arguably could rely on Section 1391(e)(1) to proceed in this Court against the United States Attorney for the District of South Carolina and the two individual Defendants who allegedly reside in this district (as well as any entities deemed to reside here, see 28 U.S.C. § 1391(c)(2)), she must establish venue under Section 1391(b) to proceed in this Court against the individual Defendants who reside in South Carolina.

considerations might give this Court personal jurisdiction over any such Defendant, see generally Hanes Cos., Inc. v. Galvin Bros., Inc., No. 1:09CV918, 2013 WL 594013, at *4-6 (M.D.N.C. Feb. 15, 2013) (unpublished) (discussing personal jurisdiction standards), recommendation adopted, 2013 WL 941791 (M.D.N.C. Mar. 11, 2013) (unpublished), the existence of personal jurisdiction only equates to residency for venue purposes as to organizational defendants (not individual defendants), see 28 U.S.C. § 1391(c)(1) & (2).[9]

Moreover, the Complaint makes clear that all alleged, material events and omissions occurred in South Carolina. (See Docket Entry 2 at 2-70.) As a result, venue lies in the District of South Carolina, but not in this district, under Section 1391(b)(2), see generally Bartko v. Wheeler, No. 1:13CV1006, 2014 WL 29441, at *8-11 (M.D.N.C. Jan. 3, 2014) (unpublished) (discussing Section 1391(b)(2)'s "substantial part of the events or omissions" test), aff'd, slip op. (M.D.N.C. Feb. 10, 2014), and the existence of venue in the District of South Carolina under Section 1391(b)(2) renders Section 1391(b)(3) inapplicable. Accordingly, no basis for venue over all claims and Defendants exists in this district and this action thus cannot proceed here, see 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the

---

[9] Nor does a defendant's transacting business with the federal government have any bearing on venue. See 28 U.S.C. § 1391.

interest of justice, transfer such case to any district or division in which it could have been brought." (emphasis added)).[10]

The Complaint's legal frivolousness also comes from its failure to identify which claim(s) pertain(s) to which Defendants (see Docket Entry 2 at 2-70), in flagrant contravention of Federal Rule of Civil Procedure 8(a)(2)'s "short and plain statement of the claim" requirement, see Masters v. Johnson, Nos. 89-35323, 35325, 35330-33, 35352, 35356-57, 35363-64, 902 F.2d 1579 (table), 1990 WL 67204, at *1 (9th Cir. May 16, 1990) (unpublished); O'Neill v. El Paso Cnty. Sheriff's Dep't, No. 14CV2114BNB, 2014 WL 3820710, at *2 (D. Colo. Aug. 4, 2014) (unpublished); Tully v. Bank of Am., N.A., Civil No. 10-4734DWF/ JSM, 2011 WL 1882665, at *6 (D. Minn. May 17, 2011) (unpublished).[11] Plaintiff's failure in this regard may represent an effort to mask her Complaint's gross misjoinder of claims and Defendants (again, in violation of applicable rules).

---

[10] Given Plaintiff's history of litigation abuse (discussed in Section IV) and the other facial defects of the Complaint (shown in Section V), the interests of justice do not support transfer.

[11] As noted in Section II, the Complaint addresses: 1) Plaintiff's alleged false arrest for harassment and the purportedly improper, related searches on December 2, 2009; 2) her alleged false arrest for unlawful use of a telephone on December 9, 2009, and the purportedly wrongful efforts to prosecute such charge in July 2012 and March 2013; and 3) her alleged false arrest for trespassing at a public building on March 23, 2011, and her purported continuing unlawful exclusion from such buildings. (Docket Entry 2 at 3-4.) A review of the Complaint confirms that the vast majority of Defendants had, at most, a discernible, alleged connection to but one of those matters. (See id. at 6-70.)

Specifically, "[a] party . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a) (emphasis added). "Thus multiple claims against a single party are fine . . . ." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). However, where, as here, a plaintiff seeks to join multiple claims against multiple defendants, "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2) (emphasis added).

As with the pleading in George, Plaintiff's Complaint does "not make any effort to show that the [100-plus] defendants [s]he named had participated in the same transaction or series of transactions or that a question of [law or] fact is common to all defendants," George, 507 F.3d at 607 (internal quotation marks omitted). (See Docket Entry 2 at 2-70.) Nor can the Court construe the Complaint to satisfy such standards, particularly given that (as shown in Section III) Plaintiff effectively took three distinct lawsuits she previously filed in the District of South Carolina (involving, inter alia, arrests by different law enforcement officers from different law enforcement agencies more

than a year apart) and attempted to cram them into one action in this Court.  The Complaint therefore cannot proceed in its present form.  See Fed. R. Civ. P. 21 (providing for dropping of parties or severance of claims to address misjoinder).

Yet another species of legal frivolousness arises from the fact that, in the Complaint's caption and title, as well as in its body, Plaintiff purports to seek "qui tam recovery" and/or to proceed on behalf of a class (see, e.g., Docket Entry 2 at 1-3, 63-64), something her pro se status prohibits, see, e.g., United States ex rel. Brooks v. Lockheed Martin Corp., 237 F. App'x 802, 803 (4th Cir. 2007) ("A lay person may not bring a qui tam action under the False Claims Act."); Myers v. Loudoun Cnty. Pub. Sch., 418 F.3d 395, 400 (4th Cir. 2005) ("An individual unquestionably has the right to litigate his own claims in federal court . . ., however, [that right] does not create a coordinate right to litigate for others." (emphasis in original)); Lang v. Nordstrom, Inc., No. 00-1236, 229 F.3d 1143 (table), 2000 WL 1124534, at *1 (4th Cir. Aug. 9, 2000) (unpublished) ("[T]he district court properly dismissed [the plaintiff's] action to the extent that he sought to bring a class action because, as a pro se litigant, [he] was not an appropriate class representative.") (citing Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975)).  The fact that Plaintiff persisted in framing her Complaint in this fashion after at least two other courts explained to her the impropriety of such

conduct, see Assa'ad-Faltas v. South Carolina, No. 3:12CV1786, 2012 U.S. Dist. LEXIS 175343, at *16-18 (D.S.C. Nov. 14, 2012) (unpublished), recommendation adopted, 2012 U.S. Dist. LEXIS 174559 (D.S.C. Dec. 7, 2012), appeal dismissed, No. 13-1034 (4th Cir. June 26, 2013) (unpublished); Assa'ad-Faltas v. Regional Postal Inspector, No. 3:12CV435, at 1-2 (W.D.N.C. July 23, 2012) (unpublished), underscores the abusive nature of this litigation, see generally Cain, 982 F. Supp. at 1136.[12]

Further grounds for dismissal stem from the Complaint's pursuit of federal constitutional claims (via 42 U.S.C. § 1983) against the State of South Carolina, as well as various of its agencies and officials (in their official capacities without limiting such claims to prospective relief). (See Docket Entry 2 at 1-5, 50, 62.) The Supreme Court made clear the impropriety of such action a quarter-century ago, see Will v. Michigan Dep't of State Police, 491 U.S. 58, 66-71 (1989), and at least one federal court previously has advised Plaintiff of that fact, see Assa'ad-

---

[12] Additionally, the Complaint's "qui tam" theory apparently revolves around the notion that Plaintiff would "recover for the federal sovereign the funds Defendants took under pretext of protecting public safety and running courts but misspent" (Docket Entry 2 at 3), but the Complaint lacks any factual matter showing either that any Defendant received any federal funds for public safety or court operations or that any Defendant misspent any such funds (see id. at 2-70). Because "Plaintiff's claims [a]re lacking in the[se] most basic elements [the Court concludes] that Plaintiff knew, or should have known, [that] making the claims [was] frivolous." Wisdom v. Centerville Fire Dist., Inc., No. CV07-95-S-EJL, 2010 WL 468094, at *2 (D. Idaho Feb. 4, 2010) (unpublished).

<u>Faltas</u>, 2012 U.S. Dist. LEXIS 175343, at *24-26 & nn.13-15. Her persistence in lodging such claims under such circumstances marks this action as both legally frivolous and malicious. <u>See generally</u> <u>Neitzke</u>, 490 U.S. at 325; <u>Cain</u>, 982 F. Supp. at 1136.

Similarly, the Complaint's targeting of judges and prosecutors ignores established immunity doctrines, <u>see, e.g.</u>, <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259 (1993); <u>Stump v. Sparkman</u>, 435 U.S. 349 (1978); <u>Lyles v. Sparks</u>, 79 F.3d 372 (4th Cir. 1996); <u>Chu v. Griffith</u>, 771 F.2d 79 (4th Cir. 1985). "[T]he absolute immunity of the defendant would justify the dismissal of a claim as frivolous." <u>Clark v. State of Ga. Pardons & Paroles Bd.</u>, 915 F.2d 636, 640 n.2 (11th Cir. 1990). Moreover, by ignoring prior decisions that specifically advised Plaintiff of the futility of suing judges and prosecutors, <u>see, e.g.</u>, <u>Assa'ad-Faltas</u>, 2013 U.S. Dist. LEXIS 188115, at *6-7 ; <u>Assa'ad-Faltas</u>, 2012 U.S. Dist. LEXIS 175343, at *19-21, 27-29, her Complaint maliciously abuses the judicial process, <u>see generally</u> <u>Cain</u>, 982 F. Supp. at 1136.

For all of these reasons, Section 1915(e)(2)(B) requires dismissal of this action as legally frivolous and malicious.

<u>ii.  Factual Frivolousness/Maliciousness</u>

The Complaint also rests on a factually frivolous foundation, i.e., that, in the course of nobly fending off efforts by numerous individuals to frame her, Plaintiff "discovered extreme corruption, criminality and/or unconstitutionality in South Carolina state

22

government and its subdivisions" (Docket Entry 2 at 2). The Supreme Court has identified factually frivolous complaints as ones involving "allegations that are fanciful, fantastic, and delusional. As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." Denton v. Hernandez, 504 U.S. 25, 32-33 (1992) (internal citations and quotation marks omitted). Put another way, the IFP statute "permit[s] the [C]ourt to apply common sense [and] reject the fantastic . . . ." Nasim, 64 F.3d at 954.

Applying common sense, the undersigned Magistrate Judge concludes that Plaintiff's Complaint relies at its core on a host of fantastic and wholly incredible allegations, such as:

1) "Plaintiff [] was falsely arrested and imprisoned mercilessly as if she were an animal *seven times* **without probable cause** by the City of Columbia and [RCSD] because she and her mother had, in March 2009, unknowingly bought land under and across which [Plaintiff's landlord] had illegally and surreptitiously run the sewer lines from two adjacent rental quadriplexes" (Docket Entry 2 at 2 (italics and bold in original));

2) "[t]he sheer number of [D]efendants . . . is the natural cause and result of a framing scheme requiring overt acts and

negligent omissions of every link in the framing as this very Court saw in the Duke lacrosse case" (id. at 3);

3) "CPD's corruption and incompetence [has] reached such severity as to compromise national security" (id. at 7);

4) City of Columbia "residents are terrorized by an armed force headed by a chief answerable to no one or to layers of bureaucracy" (id.);

5) the City of Columbia "arrested [Plaintiff] *repeatedly* to make her:  (a) halt her public criticism of CPD, (b) plead guilty to false charges brought by CPD in conspiracy with [her former landlords], (c) surrender her land to them, and (d) relent her push to reopen the cold-case murder of [her most recent landlord's husband/boyfriend's] second wife" (id. at 8 (italics in original));

6) the City of Columbia's "political process has been hijacked by CPD's *cadre* who pack City Council meetings (set to air CPD's problems) with patronage employees, their relatives and friends who address such overt threats to City Counsel [sic] members . . . [as] to foreclose elected civilian control . . . [, which] risks turning the City [of Columbia] into a police dictatorship" (id. at 9 (italics in original);

7) "[k]nowing [Plaintiff's] mother co-owns her land, [attorneys hired by Plaintiff's landlord] began conspiring with [her landlord] to cause [Plaintiff's] mother's death and run [Plaintiff] off from Columbia" (id. at 22);

24

8) "the hope and the plan [of Defendants] was for [Plaintiff] to resist arrest [on December 2, 2009] and be killed in the process with many CPD officers present to testify that her shooting was justified" (id. at 25);

9) Defendants "aimed to deplete [Plaintiffs'] health, time, energy, reputation, and family resources, and cause her death if necessary, all to prevent her from exonerating herself after she was arrested, and if she exonerated herself . . ., to prevent her from suing for damages and from exposing other official and private wrong-doing" (id. at 52);

10) "South Carolina is unable to afford [Plaintiff] *any* state judge who is unbiased and unchilled" (id. at 63 (italics in original)); and

11) "[t]he tax-payer dollars the City of Columbia, [RCSD], and others spend trying to get [Plaintiff] falsely accused and convicted strongly indicate that said entities are engaged in illegalities and want to discredit and silence [Plaintiff] for criticizing them" (id. at 68-69).

"[C]onspiracy theory claims like Plaintiff's are routinely dismissed as frivolous . . . ." Seymour v. United States Dep't of Def., No. 10CV983JLS(JMA), 2011 WL 761547, at *4 n.5 (S.D. Cal. Feb. 24, 2011) (unpublished) (internal brackets and quotation marks omitted) (citing cases); see also Tooley v. Napolitano, 586 F.3d 1006, 1009 (D.C. Cir. 2009) ("We recognize that in a nation of 300

25

million people, with millions of government employees, some are bound at any given moment to be acting unwisely, foolishly, counterproductively, mistakenly, maliciously, viciously, even inanely. But the particular combination of sloth, fanaticism, inanity and technical genius alleged here seems to us to move these allegations into the realm of claims flimsier than doubtful or questionable – essentially fictitious . . . ." (internal ellipses and quotation marks omitted)). Plaintiff's insistence on dragging numerous state judges and court staff into her ever-expanding web of litigation further marks her Complaint as both factually frivolous and malicious. See, e.g., In re Martin-Trigona, 9 F.3d 226, 230 (2d Cir. 1993) ("Making judges defendants in a repetitive series of lawsuits whenever a judge rules against a litigant is also a tactic employed by many vexatious litigants . . . .").

In sum, the Court should dismiss this entire action under Section 1915(e)(2)(B) as factually frivolous and malicious.

B.  Harassment Arrest and Search(es) on December 2, 2009

The first "claim" in the Complaint concerns the "2 December 2009, false arrest of Plaintiff on two false charges of harassment 'in the first degree' . . . and [] all robbery and ransacking of Plaintiff's apartment and car that day under invalid search and seizure warrants and procedures[.]"  (Docket Entry 2 at 3-4 (internal bold omitted) (emphasis added); see also id. at 6-32 (setting out claim under heading "The False Arrest and Imprisonment

on the False Harassment Charges")．） As discussed in Section III, in <u>Assa'ad-Faltas</u>, No. 3:12CV2991, Plaintiff similarly alleged that she "was falsely arrested on 2 December 2009 on false charges of harassment in the first degree," but the United States District Court for the District of South Carolina "f[ound] it apparent and clear from the face of the complaint that [P]laintiff fail[ed] to state a claim on which relief may be granted, and, in addition, that [P]laintiff's allegations in the above-captioned case [we]re frivolous." The same conclusions arise here, requiring dismissal of the instant claim(s) under Section 1915(e)(2)(B).

As a preliminary matter, Plaintiff's Complaint fails to request any appropriate relief related to the events of December 2, 2009. Unlike with Plaintiff's claims regarding arrests on December 12, 2009, and March 23, 2011, Plaintiff's claim(s) for false arrest/imprisonment and unlawful search(es) on December 2, 2009, do(es) not include a concluding paragraph labeled "Prayers for Relief." (<u>Compare</u> Docket Entry 2 at 31-32, <u>with</u> <u>id.</u> at 50, 62.) Moreover, the final paragraph of the instant claim(s) concedes that Plaintiff has not properly requested damages or an injunction in relation thereto, but instead asks that the Court "allow her to amend [her Complaint] and supplement it with exhibits as soon as practicable, for costs and damages, and for an immediate restraining order followed by a hearing, and for such further relief as the Court deems just and proper." (<u>Id.</u> at 32.) If

Plaintiff cannot properly allege a claim for damages or injunctive relief nearly five years after the occurrences on December 2, 2009, the Court should not wait to adjudicate her claim(s) as to such matters until she amends her Complaint. Alternatively, to the extent the Complaint does request damages and/or non-monetary relief in connection with the instant claim(s), the Court (for a number of reasons) should find such request(s) and/or the underlying claim(s) frivolous and/or legally insufficient (thus rendering them subject to dismissal under Section 1915(e)(2)(B)).

### i. Legal Frivolousness/Insufficiency

First, the patent, facial untimeliness of the false arrest/ imprisonment and invalid search claim(s) that stem from events on December 2, 2009, makes such claim(s) legally frivolous. See Nasim, 64 F.3d at 955-56. Claims for false arrest/imprisonment and illegal search sound under the Fourth Amendment to the United States Constitution, see Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) ("The gravamen of a Fourth Amendment claim is that the complainant's legitimate expectation of privacy has been violated by an illegal search or seizure."); Rogers v. Pendleton, 249 F.3d 279, 294 (4th Cir. 2001) ("[F]alse arrest and false imprisonment claims . . . are essentially claims alleging a seizure of the person in violation of the Fourth Amendment . . . ."), and "Section 1983 of Title 42 [of the United States Code] creates a cause of action against any person who, acting under color of state

law, abridges a right arising under the Constitution or laws of the United States," Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013).[13]   A three-year statute of limitations applies to such claims.  See Wilson v. Garcia, 471 U.S. 261, 276-80 (1985) (holding that, in Section 1983 actions, state personal injury limitations period controls); Heyward v. Monroe, No. 97-2430, 166 F.3d 332 (table), 1998 WL 841494, at *3 (4th Cir. Dec. 7, 1998) (unpublished) ("The statute of limitations for [Section 1983] causes of action arising in South Carolina is three years." (citing S.C. Code § 15-3-530(5))); Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996) (applying North Carolina's three-year limitations period for personal injuries to Section 1983 actions).

The question therefore becomes when the three-year statute of limitations for Plaintiff's instant claim(s) for false arrest/ imprisonment and unlawful search(es) began to run.  "[T]he accrual date of a § 1983 cause of action is a question of federal law . . . conforming in general to common-law tort principles.  Under those principles, it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action . . . ." Wallace v. Kato, 549 U.S. 384, 388 (2007) (internal brackets citations, and quotation marks omitted).

---

[13] The Complaint specifically invokes the Constitution and Section 1983.  (Docket Entry 2 at 4.)

"There can be no doubt that [Plaintiff] could have filed suit as soon as the allegedly wrongful arrest[/imprisonment/search] occurred . . ., so the statute of limitations would normally commence to run from that date." Id. However, "[t]he running of the statute of limitations on false imprisonment is subject to a distinctive rule — dictated, perhaps by the reality that the victim may not be able to sue while he is still imprisoned:  Limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends." Id. at 389 (internal quotation marks omitted).  "Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process* — when, for example, he is bound over by a magistrate or arraigned on charges." Id. (italics in original). Here, the Complaint concedes that Plaintiff appeared before a judicial official on December 2, 2009, and bonded out on December 4, 2009.  (Docket Entry 2 at 38, 40.)  Plaintiff's three-year period to bring her instant false arrest/imprisonment and illegal search claim(s) thus began to run no later than December 4, 2009, and expired on or before December 4, 2012, long before she filed this action on August 13, 2014 (see Docket Entry 2 at 1 (bearing file-stamp of August 13, 2014); see also id. at 70 (dating Complaint as signed on August 12, 2014).[14]

_____

[14] Despite the clarity of the above-referenced, controlling authority, the Complaint asserts that "the false arrest and
(continued...)

Second, Plaintiff's instant false arrest/imprisonment claim(s) fail(s) as a matter of law (and, indeed, so lack(s) an arguable basis as to qualify as frivolous) because the Complaint admits that CPD officers arrested her for harassment in the first degree on December 2, 2009, <u>pursuant to a warrant</u> (<u>see</u> <u>id.</u> at 25). "[A] public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant." <u>Porterfield v. Lott</u>, 156 F.3d 563, 568 (4th Cir. 1998) (citing <u>Brooks</u>, 85 F.3d at 181-82).[15] Similarly, "[c]laims of false imprisonment address

<hr>

[14](...continued)
imprisonment charges [are] timely brought well within the statute of limitations as keyed, not from the date of the false arrest, but from the date of the final resolution in favor of [Plaintiff]." (Docket Entry 2 at 5; <u>see also</u> <u>id.</u> at 28-29 ("The harassment charges . . . were finally called for trial . . . on 13 August 2012. [Plaintiff] pro se ably argued for, and was granted, their final dismissal WITH PREJUDICE. Because under SC state law, the Prosecution has ten (10) days to appeal judicial dismissal, and the final resolution in favor of the criminal defendant is not considered final until an order of expungment [sic] issues, the final resolution in favor of [Plaintiff] did not occur until October 2012. In any event, this [C]omplaint is comfortably timely under Heck v. Humphrey." (capitalization as in original) (bold omitted)).) Plaintiff thus appears to contend, as have others before her, "that <u>Heck v. Humphrey</u>, 512 U.S. [] 477 [(1994)], compels the conclusion that h[er] suit could not accrue until the State dropped its charges against h[er]," <u>Wallace</u>, 549 U.S. at 392. The Supreme Court, however, expressly has rejected that position and, instead, has mandated that a person aggrieved by an alleged false arrest/imprisonment institute any federal damages action within three years of the end of <u>custody without judicial process</u>, even if related state criminal charges remain pending, with the understanding that the federal court may stay any such civil proceedings until the state criminal case ends. <u>Id.</u> at 392-94.

[15] The Complaint alleges no facts that undermine the facial validity of the warrant(s) at issue. (<u>See</u> Docket Entry 2 at 6-32.)

detainment of an individual 'without legal process;' thus, when an arrest is made pursuant to an arrest warrant, there is no false imprisonment." Simmons v. Atkinson, No. 1:11CV110, 2013 WL 633587, at *3 (M.D.N.C. Feb. 20, 2013) (unpublished); accord Magwood v. United States Dist. Ct., C/A No. 2:13-307-DCN-BM, 2013 WL 869590, at *4 (D.S.C. Feb. 25, 2013) (unpublished), recommendation adopted, 2013 WL 869579 (D.S.C. Mar. 7, 2013) (unpublished), appeal dismissed, 544 F. App'x 199 (4th Cir. 2013); Adams v. Parsons, Civil Action No. 2:10-0423, 2011 WL 1464856, at *4 (S.D.W. Va. Apr. 15, 2011) (unpublished); Bellamy v. Wells, 548 F. Supp. 2d 234, 237 (W.D. Va. 2008); Peacock v. Mayor & City Council of Baltimore, 199 F. Supp. 2d 306, 309 (D. Md. 2002).

Third, Plaintiff's instant claim of "invalid search and seizure warrants and procedures" (Docket Entry 2 at 4) fails as a matter of law because she has offered insufficient, non-fanciful factual allegations to establish any constitutional violation related to the search warrants (see id. at 6-32). In other words, "[the] [C]omplaint does not adequately plead such a claim. It merely alleges in conclusory fashion that the procurement and execution of the [challenged] search warrant . . . violated [her] constitutional rights. 'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Martin v. Hilkey, 460 F. App'x 760, 762 (10th Cir. 2012) (quoting Iqbal, 556 U.S. at 678) (internal brackets,

citations, and some quotation marks omitted); see also Gonzales v.
City of Fostoria, No. 3:13CV796, 2014 WL 99114, at *8 (N.D. Ohio
Jan. 9, 2014) (unpublished) ("In their complaint, [the plaintiffs]
have not identified any false statements contained in the
application for the search warrant. In addition, they fail to
identify how [any] alleged false information was material to the
state court judge's finding of probable cause. Because their
complaint fails to plead [such] facts . . ., [their] Fourth
Amendment allegations regarding the search warrant are dismissed
with prejudice."); Moore v. City of N.Y., No. 08CV2449(RRM)(LB),
2011 WL 795103, at *3 (E.D.N.Y. Feb. 28, 2011) (unpublished)
("[The] [p]laintiff's [a]mended [c]omplaint contains nothing more
than vague, circular, and conclusory allegations of an invidious
conspiracy. . . . Moreover, aside from his conspiracy allegations,
[the] [p]laintiff has not demonstrated how the issuance and
execution of the search warrant violated his constitutional rights
. . . . In short, [the] [p]laintiff's conclusory allegations are
not entitled to the presumption of truth, Iqbal, [556 U.S. at 680-
81], and accordingly, his § 1983 claims . . . are dismissed for
failure to state a claim upon which relief can be granted.").

Fourth, Plaintiff's instant claim(s) for false arrest/
imprisonment and illegal search(es) cannot support the declaratory
and injunctive relief mentioned in that section of the Complaint.
Buried within the 25-plus pages of single-spaced allegations in the

Complaint's section entitled "The False Arrest and Imprisonment on the False Harassment Charges" (Docket Entry 2 at 6-32), these references to non-monetary redress appear:

1) "[Plaintiff] prays this Court to declare any bond condition preventing a criminal defendant from returning to the only home she has as per se violative of the Eighth Amendment" (<u>id.</u> at 26);

2) "[Plaintiff] prays the Court to declare a right to immediate evidentiary hearing for every criminal defendant who has evidence that the Prosecution intends to use falsehoods" (<u>id.</u>);

3) "[Plaintiff] prays this Court to hold South Carolina's harassment and stalking statute and unlawful use of a telephone statute, as well as bond procedures wherein the alleged victim is not sworn or cross-examined all unconstitutional" (<u>id.</u> at 29);

4) "[Plaintiff] prays this Court to hold an immediate hearing on CPD's role in the fabrication and falsification of evidence against her and against others and to find that CPD has become a crime syndicate and should be dissolved immediately with all its members retrained before any of them applies to be rehired by the to-be-newly-constituted unified County law enforcement force" (<u>id.</u> at 31);

5) "[Plaintiff] also prays this Court to order [the United States Attorney for the District of South Carolina and others] to release the results of their months-long investigation into CPD misconduct and incompetence" (<u>id.</u>); and

34

6) "[Plaintiff] prays this Court to order [South Carolina's] Attorney General [] to review all [South Carolina] statutes held unconstitutional by the [South Carolina] or U.S. Supreme Courts and/or by federal courts to cause SC's [sic] to repeal and/or to rewrite them . . . [and,] [i]n the interim, [Plaintiff prays] this Court [to] enjoin their enforcement by any and all officers in South Carolina, specially CPD (id.).

This Court's authority to afford declaratory relief arises only "[i]n a case of actual controversy within its jurisdiction . . . upon the filing of an appropriate pleading . . . ." 28 U.S.C. § 2201(a). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941). In the context of challenges to the constitutionality of state criminal laws, a federal court may consider declaratory relief when a "federal plaintiff demonstrates a genuine threat of enforcement of a disputed state criminal statute, whether an attack is made on the constitutionality of the statute on its face or as applied." Steffel v. Thompson, 415 U.S. 452, 475 (1974).

Even greater restrictions apply to injunctive relief, which "is not a remedy which issues as of course," Weinberger v. Romero-

Barcelo, 456 U.S. 305, 311 (1982) (internal quotation marks omitted).  Most notably, federal courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction . . . and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law."  Id. at 312-13.  Further, "injunctive relief . . . should not go beyond the extent of the established violation."  Hayes v. North State Law Enforcement Officers Ass'n, 10 F.3d 207, 217 (4th Cir. 1993).  "In other words, [the Fourth Circuit] will vacate an injunction if it . . . does not carefully address only the circumstances of the case."  PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 128 (4th Cir. 2011) (emphasis added) (internal quotation marks omitted).

Pursuant to the explicit language of the Complaint, Plaintiff's instant claim(s) related to her harassment arrest on December 2, 2009, concern only alleged Fourth Amendment violations for false arrest/imprisonment and unlawful search(es). (See Docket Entry 2 at 3-4.)  Any other claims for matters pertaining to the harassment charge(s) **are expressly reserved for other complaints . . . ."** (Id. at 4 (bold in original).)  Accordingly, any request for declaratory or injunctive relief addressed to (1) bond conditions/procedures and the Eighth Amendment, (2) evidentiary hearings to prevent prosecutors from relying on false evidence or to ferret out fabrication of evidence by the CPD, (3) the

36

constitutionality of South Carolina statutes other than the one criminalizing harassment, and (4) any investigation by a United States Attorney into the general conduct and competence of the CPD falls outside the realm of Plaintiff's instant false arrest/ imprisonment and invalid search claim(s) (and thus beyond the jurisdiction of this Court and/or its equitable authority). Further, an injunction dissolving the CPD in favor of a new law enforcement agency of the Court's own creation would so far exceed the scope of the alleged Fourth Amendment violation(s) on December 2, 2009, and would portend such troubling public consequences as to constitute a clear abuse of the Court's discretion in equity.

The only remaining relief request in this section of the Complaint asks the Court to strike down/bar enforcement of South Carolina's harassment statute, which generally bars "intentional, substantial, and unreasonable intrusion into the private life of a targeted person that serves no legitimate purpose and causes the person and would cause a reasonable person in his position to suffer mental or emotional distress," S.C. Code § 16-3-1700(A) & (B); see also S.C. Code §§ 16-3-1710, 16-3-1720 (setting penalties for violations of S.C. Code § 16-3-1700(A) & (B), respectively). According to the Complaint, said statute "on its face criminalizes free speech and freedom of movement . . . [and] is also void for vagueness [and] violates the Fourth, Fifth, Eighth and Fourteenth Amendments, [while] accomplish[ing] nothing that existing laws

against assault, damage to property, battery, and/or breaking and entering do not or that civil causes of action may not compensate." (Docket Entry 2 at 29.) The Complaint, however, does not allege facts establishing a case or controversy that would allow the Court to invalidate South Carolina's harassment statute.

In that regard, the Complaint acknowledges that, on August 13, 2012 (two years before Plaintiff filed this action), she secured final dismissal (with prejudice) of the harassment charge(s) originally lodged against her on December 2, 2009. (See id. at 28.) Further, although the Complaint asserts in conclusory terms that Plaintiff's "injuries from the unconstitutional statutes are capable of repetition yet evading review" (id.), it does not set forth factual matter showing that Plaintiff has faced additional harassment arrests or that the CPD has engaged in a pattern of enforcement of the harassment statute that interferes with her otherwise lawful activities (see id. at 6-32). Nor has Plaintiff alleged an intent to engage in any conduct that she reasonably might fear would result in harassment charges. (See id.)

Under these circumstances, Plaintiff lacks standing to obtain (and this Court thus lacks jurisdiction to issue) a declaratory judgment invalidating or an injunction proscribing enforcement of South Carolina's harassment statute. See, e.g., O'Shea v. Littleton, 414 U.S. 488, 497-98 (1974) ("Here we can only speculate whether [the plaintiffs] will be arrested . . . for violating a

municipal ordinance or a state statute, particularly in the absence of any allegations that unconstitutional criminal statutes are being employed to deter constitutionally protected conduct.  Even [where a plaintiff has] attacked a specific statute under which he had previously been prosecuted, the threat of a new prosecution [must be] sufficiently imminent to satisfy the jurisdictional requirements of the federal courts.  [The plaintiffs] here have not pointed to any imminent prosecutions contemplated against any of their number . . . .  [T]he threat of injury . . . is simply too remote to satisfy the case-or-controversy requirement and permit adjudication by a federal court."); Srivastava v. Newman, 12 F. App'x 369, 372 (7th Cir. 2001) ("[The plaintiff's] request for an injunction [striking down a state stalking statute] arises from a criminal case that has long since terminated.  She alleged no threatened or pending criminal prosecution and therefore lacks standing to seek injunctive relief."); Mendy v. City of Fremont, No. C-13-4180MMC, 2014 WL 574599, at *5 (N.D. Cal. Feb. 12, 2014) (unpublished) ("Here, as noted, [the] plaintiffs allege certain of the defendants arrested [one of them] without probable cause . . . and caused false charges to be filed against [them] . . . .  Those particular alleged constitutional violations had ceased prior to the filing of the instant action and, consequently, the harm [the] plaintiffs allege they incurred as a result of the alleged violations does not provide them with standing to seek equitable

relief.  As [the] plaintiffs do not allege facts to support a finding that they otherwise face an actual and imminent threat from [the] defendants, [the] plaintiffs fail to allege facts to support a finding that they have standing to seek equitable relief." (internal citations and quotation marks omitted)).

All of these clear legal deficiencies mandate dismissal under Section 1915(e)(2)(B) of Plaintiff's instant claim(s) for false arrest/imprisonment and invalid search(es) on December 2, 2009.

### ii.  Factual Frivolousness

The section of the Complaint addressing the instant claim(s) also qualifies as factually frivolous.  As described in Part V.A.ii., the Complaint generally relies on the fantastic theory that the CPD (which allegedly controls the government of the City of Columbia) and the RCSD, as well as numerous South Carolina judges, court staff, and attorneys, have joined forces with Plaintiff's landlord to violate Plaintiff's federal constitutional rights (and, indeed, to try to kill her).  Regarding the instant claim(s), the Complaint alleges that, "[o]n 2 December 2009, the [CPD] falsely arrested [Plaintiff] and charged her with two counts of having 'harassed' [her landlord] and one [of her landlord's other] tenant[s], 'in the first degree' by having:  (a) sued [her landlord]  in  civil  court,  (b)  criticized  [her  landlord's] management of the rental buildings, (c) inquired of the [allegedly harassed tenant] if her rent was lower than [Plaintiff's] for an

identical apartment, (d) questioned in the apartments' parking lot a suspicious prowler who claimed to be [said tenant's] cousin, and (e) photographed one of [said tenant's] 'guests' engaged in illegal acts in same parking lot."  (Docket Entry 2 at 27.)

Elsewhere, however, the Complaint concedes that the harassment charges in question actually encompassed alleged conduct by Plaintiff far beyond what her foregoing summary suggested.  (See id. at 13 (noting, in reference to "harassment charges on which [Plaintiff] was arrested on 2 December 2009 . . . [, that,] to the extent she took photographs, made recordings, and asked her neighbors not to smoke at her **all in public**, she was exercising her First Amendment right to speech and her Section 1981 right to 'obtain evidence' for her civil lawsuit," that the prosecutor attempted to prove that the allegedly harassed tenant's "family and friends visited her regularly until crazed [Plaintiff] started taking their pictures for no reason and calling them prostitutes," and that (at trial) Plaintiff had "show[n] the *physical impossibility* of her having 'blocked [said tenant] in from going to work' in summer 2009, followed [her landlord] on 26 March 2009, [or] intruded on either false accuser's 'day-to-day routine'" (bold and italics in original)); see also id. at 20 (stating that, as a result of conflict with her landlord and the allegedly harassed tenant, Plaintiff felt "a necessity of documenting everything with photos and tapes"), 56 (describing Plaintiff's conversation with an

41

RCSD deputy who "insisted that [Plaintiff] should have been convicted of harassment because she had called [the allegedly harassed tenant] 'a whore' [whereupon Plaintiff responded] . . . that the First Amendment allows anyone to call anyone else 'a whore' subject to civil damages for defamation").)

To put it succinctly, the Complaint indicates that Plaintiff's arrest on December 2, 2009, stemmed, inter alia, from allegations (admitted, at least to some extent, by Plaintiff) that she repeatedly photographed, recorded, and directed vile epithets at her landlord, a fellow tenant, and their family/friends. Such conduct would appear to support a charge of harassment in the first degree under South Carolina law. See S.C. Code § 16-3-1700(A) ("'Harassment in the first degree' means a pattern of intentional, substantial, and unreasonable intrusion into the private life of a targeted person that serves no legitimate purpose and causes the person and would cause a reasonable person in his position to suffer mental or emotional distress.").[16]  Further, although the Complaint goes to great lengths to try to show that Plaintiff's

---

[16] The statute cites as non-exclusive examples:  "(1) following the targeted person as he moves from location to location; (2) visual or physical contact that is initiated, maintained, or repeated after a person has been provided oral or written notice that the contact is unwanted or after the victim has filed an incident report with a law enforcement agency; (3) surveillance of or the maintenance of a presence near the targeted person's: (a) residence; (b) place of work; (c) school; or (d) another place regularly occupied or visited by the targeted person; and (4) vandalism and property damage."  S.C. Code § 16-3-1700(A).

landlord, the allegedly harassed tenant, and witnesses who supported them lack credibility (see Docket Entry 2 at 13-18), elsewhere it more effectively (if unintentionally) shows the frivolousness of Plaintiff's instant claim(s).

To begin with, the Complaint acknowledges Plaintiff's prior embroilment in a series of disputes with other landlords. (See, e.g., id. at 10-11 ("Between 1991 and 2002, [Plaintiff] rented Hampton Greene Apt. 2002 which was bought by United Dominion Realty (UDR) in 1995. That caused landlord-tenant civil suits between UDR and [Plaintiff]. In 1999, UDR agents falsely accused [Plaintiff] of disorderly conduct and had her prosecuted . . ., [but she] exonerated herself pro se. In July 2001 UDR, acting through [a law firm], settled all then-standing claims between UDR and [Plaintiff]." (internal paragraph number omitted)), 12-13 ("In July 2002, [Plaintiff] and her mother rented the 436 Byron Road, Columbia, 29209, house form [sic] Sharon Koon . . . . Koon concocted a scheme to default on her mortgage . . . [which] necessitated evicting [Plaintiff]. So, in 2005 Koon tried to unilaterally raise the rent to 150% above fair market value. [Plaintiff] refused. Koon then had [Plaintiff's] neighbors stalk her . . . .").) The Complaint does not describe how Plaintiff's conflict with the second of those previous landlords (Koon) resolved, except to state that, "[i]n August 2008, [Plaintiff] learned she must vacate 436 Byron Road" (id. at 13) and that "Koon

forcefully, brutally and unexpectedly set [Plaintiff] out on 30 September 2008" (id.). A decision by the South Carolina Supreme Court (discussed in Section IV), however, fills in the blanks (and confirms that Plaintiff should have expected her forcible removal):

1) in 2006, Koon "filed an application for ejectment based on [Plaintiff's and her mother's] failure to pay rent when due, expiration of the term of the lease, and [their] violation of the terms of the lease," Koon, 666 S.E.2d at 232, 379 S.C. at 153 (internal parenthetical numbers omitted);

2) "the magistrate granted [Koon's] motion for summary judgment and ordered the eviction of [Plaintiff and her mother]," id. at 232, 379 S.C. at 154;

3) "the circuit court affirmed the magistrate's grant of summary judgment," id. at 233, 379 S.C. at 154; and

4) in August 2008, South Carolina's Supreme Court "affirm[ed] the grant of summary judgment," id. at 235, 379 S.C. at 158.[17]

On the heels of that eviction, the Complaint alleges that "[Plaintiff] rented 304 Byron Apt. 3" (Docket Entry 2 at 13), one of eight units which "Dinah Steele owns [in] two quadriplexes on 300 and 304 Byron Road, Columbia" (id. at 12). Predictably, given

---

[17] Moreover, in reaching its decision, the South Carolina Supreme Court observed that Plaintiff had construed the tenancy agreement in a manner that produced an "absurd result," Koon, 666 S.E.2d at 233, 379 S.C. at 155, and that, in the course of the conflict, Plaintiff sought "to take advantage of [Koon's] generosity," id. at 234, 379 S.C. at 156.

Plaintiff's above-noted prior tenancy record, she promptly instigated conflict, including (as shown by her own Complaint):

1) attempting to insinuate herself into the affairs of Teresa Ingram (the tenant-victim in the harassment charges lodged against Plaintiff on December 2, 2009) (see id. at 17 ("On 15 February 2009, [] Ingram called police to report [a domestic dispute] . . . . [Plaintiff] asked [the responding officer] if there is risk [to Plaintiff and later] . . . told Ingram she should apologize to [her] neighbor 'if she loves God' and asked Ingram to recite the Lord's prayer as an antidote to anger."));

2) purchasing a small strip of land adjacent to Steele's apartment buildings and commencing construction of a single-family home (without even a courtesy warning to Steele) (see id. at 17-18 ("In November 2008, [Plaintiff] learned that the northern most part of the vacant land immediately south of the 304 Byron Road quadriplex was really the 'pole' end of a 'flagpole' property addressed 311 Veteran's Road . . . . [The owner] agreed to sell [Plaintiff] the 'pole' end if she could get permits to subdivide it from the main property and build on it. That approval [which involved securing an exception to applicable zoning restrictions] arrived towards the end of February 2009 . . . [and, on] 2 March 2009, [Plaintiff] closed on the land . . . ."); and

3) responding to Steele's objection to the construction plan (upon belatedly learning of it) by "call[ing] the police to give

45

Steele notice not to trespass on [Plaintiff's] land" (id. at 18-19), "call[ing] [Steele's attorney to] warn[] him against a frivolous appeal of [Plaintiff's] special exception [from zoning restrictions]" (id. at 19), and "su[ing] [Steele] for discrimination in rental terms and conditions and tortious interference with [Plaintiff's] plans to build on land adjacent to Steele's two rental quadriplexes" (id. at 27).

The Complaint further demonstrates that, as such conflict played out, Plaintiff became increasingly irrational; for example:

1) Plaintiff concluded that Steele "needed to run [Plaintiff] off because . . . sewer lines from 300 and 304 Byron Road had been illegally and clandestinely run under and across the 324 Byron Road land to camouflage them from view and thus avoid paying initial tap fees and later monthly sewer bills" (id. at 18);

2) "[Plaintiff] told [Steele's attorney] that [Plaintiff] would consider [any] further efforts to spray her apartment with chemicals . . . 'an attempted murder'" (id. at 21);

3) when Steele refused to pay $10,000 either to re-route her sewer lines or to buy an easement from Plaintiff, Plaintiff inferred that Steele had "decided to get rid of [Plaintiff] and her mother . . . [by] caus[ing] [Plaintiff's] mother's death and run[ning] [Plaintiff] off from Columbia" (id. at 22);

4) Plaintiff theorized that Ingram "offered her services against [Plaintiff] to Steele [and Steele's husband/boyfriend] for pay in the form of free rent" (id. at 23); and

5) Plaintiff convinced herself that another tenant "intensified his intentional smoking towards [Plaintiff's] apartment to aggravate her asthma" (id.).

According to the Complaint, on September 11, 2009, the dispute between Plaintiff and Steele escalated to the point of physical contact when, during an encounter orchestrated by Plaintiff for the purported purpose of personally serving Steele with a letter, Steele "stretched her hand to push [Plaintiff, who] quickly put the letter on Steele [sic] outstretched forearm, said 'You've got it' and turned away . . . ." (Id.) Steele apparently then called the CPD and, when officers responded, Plaintiff refused to come out of her apartment to talk with them, instead demanding the presence of a shift supervisor (whom Plaintiff subsequently directed to speak to her lawyer on the telephone). (Id. at 24.)

The Complaint thereafter implausibly deduces that Steele's husband/boyfriend somehow "recruited [the] City's Attorney's office . . . and [the] CPD in his schemes [against Plaintiff, ultimately resulting in her arrest for harassment]." (Id.; see also id. at 7-8 ("CPD-seen videos of CPD's 2 December 2009 arrest of [Plaintiff] and ransacking of her car and apartment show [a] CPD Investigator [] displaying the warrants to Larry Wayne Mason [Steele's husband/

boyfriend] and boasting: **'I singed** [sic] **them *for you*, Wayne.'"** (bold and italics in original)), 25 ("It is also clear that the hope and the plan was for [Plaintiff] to resist arrest and be killed in the process with many CPD officers present to testify that her shooting was justified."), 53 ("[A prosecutor] and others first schemed to keep [Plaintiff] permanently incarcerated pending a trial [said prosecutor] initially intended to never mount. But when . . . those schemes failed . . ., [said prosecutor], [a circuit court judge] and others decided to railroad [Plaintiff] into a false conviction by rushing her to trial . . . .").)[18]

After carefully considering all of the foregoing matters and employing common sense, see Nasim, 64 F.3d at 954, the undersigned Magistrate Judge concludes that Plaintiff's claim(s) of false arrest/imprisonment and invalid search(es) on December 2, 2009, rely(ies) on "fanciful factual allegation[s]," Neitzke, 490 U.S. at 325. The Court therefore should dismiss Plaintiff's instant claim(s) as frivolous under Section 1915(e)(2)(B).

---

[18] The Complaint alleges that the attempted railroading in circuit court failed as, "[o]n 22-26 February 2010, [Plaintiff] ably defended herself against the false harassment charges . . . and the jury deadlocked." (Docket Entry 2 at 26.) According to the Complaint, a prosecutor thereafter "remanded the charges as reduced to second-degree harassment to Columbia Municipal Court" (id.; see also id. at 27 ("Harassment in the first degree exceeds [the municipal court's] petty-offense jurisdiction . . . .")) and, "on 13 August 2012[,] [Plaintiff] pro se ably argued for, and was granted, their final dismissal WITH PREJUDICE" (id. at 28 (capitalization as in original) (bold omitted)).

The Complaint's second "claim" addresses "the <u>false arrest</u> of Plaintiff on Saturday, 12 December 2009, on [a] false charge of 'unlawful use of telephone' which was resolved in her favor on 6 October 2010, . . . and Defendants' <u>continued efforts to bring that false charge to trial</u> until July 2012 and March 2013[.]"  (Docket Entry 2 at 4 (internal bold omitted) (emphasis added); <u>see also</u> <u>id.</u> at 32-50 (setting out claim under heading "The Saturday, 12 December 2009 False Arrest on False Charge of Unlawful Use of Telephone").)  Section III documents that, in <u>Assa'ad-Faltas</u>, 2014 U.S. Dist. LEXIS 87526, the United States District Court for the District of South Carolina rejected the same claim(s) by Plaintiff. This Court now should dismiss the instant claim(s) under Section 1915(e)(2)(B) as frivolous and for failure to state a claim.

As an initial matter, Plaintiff's instant Section 1983/Fourth Amendment false arrest claim[19] qualifies as legally frivolous due to its tardiness.  <u>See</u> <u>Nasim</u>, 64 F.3d at 955-56.  Specifically, even employing the alleged date of final resolution in Plaintiff's favor of the unlawful use of telephone charge (October 6, 2010 (<u>see</u>

---

[19] "[F]alse arrest . . . claims . . . are essentially claims alleging a seizure of the person in violation of the Fourth Amendment," <u>Rogers</u>, 249 F.3d at 294, and "Section 1983 . . . creates a cause of action against any person who, acting under color of state law, abridges a right arising under the Constitution," <u>Cooper</u>, 735 F.3d at 158.  Plaintiff expressly seeks to proceed on such grounds.  (<u>See</u> Docket Entry 2 at 4.)

Docket Entry 2 at 4)) as the accrual date,[20] her assertion of the instant claim in her Complaint (filed August 13, 2014 (see id. at 1)) came well outside the apposite three-year limitations period, see Heyward, 1998 WL 841494, at *3; Brooks, 85 F.3d at 181.[21]

In addition, the Complaint fails to state a claim for false arrest on December 12, 2009. According to the Complaint, following Plaintiff's arrest on December 2, 2009 (for harassing her landlord and a fellow tenant), the municipal judge before whom Plaintiff

---

[20] Pursuant to the analysis in Wallace, 549 U.S. at 388-94, the limitations period actually began to run much earlier.

[21] As noted above, Plaintiff brought an identical false arrest claim in the District of South Carolina, which that court dismissed without prejudice (but also without reference to any tolling). Assa'ad-Faltas, 2014 U.S. Dist. LEXIS 87526, at *3. Plaintiff asserts (without any supporting citation) that her time to bring the instant claim was "tolled by [that prior] dismissal *wihtout* [sic] prejudice." (Docket Entry 2 at 5 (italics in original).) Persuasive authority counsels otherwise. See Williams v. Cathy, No. 3:08CV65, 2008 WL 2277544, at *3 (W.D.N.C. June 2, 2008) (unpublished) (explaining that state tolling rules apply to Section 1983 claims and that, under North Carolina law, dismissal without prejudice does not toll limitations period unless order provided for tolling); see also Gallipeau v. Ham, No. C/A No. 0:13-505-TMC, 2014 WL 2613178, at *4 (D.S.C. June 10, 2014) (unpublished) ("'It is well settled in South Carolina that when an action is dismissed without prejudice, the statute of limitations will bar a subsequent suit if the statute runs in the interim.' Rink v. Richland Mem'l Hosp., 310 S.C. 193, 422 S.E.2d 747, 749 (S.C. 1992) (citing Davis v. Lunceford, 287 S.C. 242, 335 S.E.2d 798 (S.C. 1985)). 'If a case is dismissed without prejudice, the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by the filing of that case.' McMorris v. Sherfield, [No. 6:10CV670JMC-KFM,] 2010 WL 5488905, at *3 (D.S.C. Aug. 30, 2010) [(unpublished)] (citing Elmore v. Henderson, 227 F.3d 1009, 1011 (7th Cir. 2000)). 'In other words, for statute of limitations purposes, a suit dismissed without prejudice is treated as if it had never been filed.' Id.").

appeared "ordered [her] to not return to her Byron [Road] apartment except with police escort and to not live there."  (Docket Entry 2 at 40.)  Plaintiff apparently made CPD-supervised visits to her apartment on December 4, 8, and 9, 2009, and called CPD dispatchers at least twice on December 10 and 11, 2009, seeking to enter her apartment yet again.  (See id.)  Purported transcripts of telephone calls and CPD radio communications from Saturday, December 12, 2009, incorporated into the Complaint, further reflect that:

1) Plaintiff traveled to a CPD office and, upon finding it closed, called a CPD dispatcher to request that an officer come meet Plaintiff and accompany her to her apartment (id. at 42-43);

2) despite the dispatcher having declined to give Plaintiff a definite time when an officer might arrive, after the first call ended between 12:23 and 12:28 p.m., Plaintiff called back to CPD dispatchers at least five times before 1:39 p.m. (apparently in an increasingly agitated state), complaining (repeatedly) about having to wait for an officer, arguing (repeatedly) about the content of her prior discussions with dispatchers, seeking to speak with a dispatch supervisor, and demanding to know the exact whereabouts of the patrol sergeant on duty in the area, as well as his mobile number, so she either could track him down in person or could call him directly to make arrangements that suited her (id. at 43-47);

3) at 1:39 p.m., CPD Sergeant Auld arrived at Plaintiff's location and "arrested [her] for harassing phone calls . . . [t]o

the dispatchers" (id. at 47-48; see also id. at 48 ("Ma'am, you can't call up and yell at the dispatchers . . . . You cannot do that. . . . [The dispatcher] told you that we would be as [sic] over here as quick as we could. And you kept calling back and yelling at the dispatchers. You can't do that, ma'am.").[22]

---

[22] The Complaint's caption identifies Sergeant Auld as a Defendant. (Docket Entry 2 at 1.) Sergeant Auld's late father and the undersigned Magistrate Judge's late father were brothers. Accordingly, Sergeant Auld's late father was the undersigned Magistrate Judge's uncle, Black's Law Dictionary 1524 (6th ed. 1990) ("Uncle. The brother of one's father or mother."), and Sergeant Auld is the undersigned Magistrate Judge's first cousin, id. at 362 (defining "[f]irst cousins" as "the children of one's uncle or aunt"). That fact, however, does not require recusal. See 28 U.S.C. § 455(b)(5) (mandating disqualification of a federal judicial official when "a person within the third degree of relationship to [the federal judicial official] . . . [i]s a party to the proceeding"); see also 28 U.S.C. § 455(d)(2) (providing that "the degree of relationship is calculated according to the civil law system"); United States v. Fazio, 487 F.3d 646, 653 (8th Cir. 2007) ("A first cousin is considered the fourth degree of relationship."); Njie v. Lubbock Cnty., Tex., 999 F. Supp. 858, 862 (N.D. Tex. 1998) ("According to the civil law system . . . [']t]he fourth degree of relationship includes first cousins . . . .[']" (quoting 23 Am. Jur. 2d Descent & Distribution § 55 (1983))). Moreover, because no close personal relationship exists between Sergeant Auld and the undersigned Magistrate Judge (e.g., the undersigned Magistrate Judge has not spoken to Sergeant Auld since his father's funeral in January 2006), no basis for recusal exists under the general provision that demands disqualification where a federal judicial official's "impartiality might reasonably be questioned," 28 U.S.C. § 455(a). See Liteky v. United States, 510 U.S. 540, 553 (1994) ("It would obviously be wrong, for example, to hold that 'impartiality could reasonably be questioned' simply because one of the parties is in the fourth degree of relationship to the judge. Section 455(b)(5), which addresses the matter of relationship specifically, ends the disability at the third degree of relationship, and that should obviously govern for purposes of § 455(a) as well."); In re International Bus. Machs. Corp., 618 F.2d 923, 929 (2d Cir. 1980) ("[I]f a judge's first cousin is a party to a case and no disqualification arises under section
(continued...)

As a recommendation (later adopted) in the District of South Carolina observed in dispatching an identical claim:

> "There is no cause of action for 'false arrest' under section 1983 unless the arresting officer lacked probable cause." <u>Street v. Surdyka</u>, 492 F.2d 368, 372-73 (4th Cir. 1974).
>
> . . . Plaintiff's complaint contains . . . telephone transcripts demonstrating numerous calls she made to [CPD dispatchers] prior to her arrest on December 12, 2009. Because Plaintiff's own pleadings demonstrate she repeatedly called the CPD dispatcher[s] and that Sgt. Auld had been informed that Plaintiff had been harassing and yelling at the dispatcher[s], Plaintiff's complaint fails to demonstrate a lack of probable cause for her arrest or an unreasonable seizure under the Fourth Amendment. <u>See Figg [v. Schroeder]</u>, 312 F.3d [625,] 636 [(4th Cir. 2002)] ("An officer has probable cause for arrest if the facts known to him at the time would warrant the belief of a prudent person that the arrestee had committed or was committing a crime.") (citing <u>Beck v. Ohio</u>, 379 U.S. 89, 91 (1964)). Thus, Plaintiff's false arrest claim is subject to summary dismissal.

<u>Assa'ad-Faltas</u>, 2013 U.S. Dist. LEXIS 188115, at *11-12 (some internal citations omitted); <u>see also</u> <u>id.</u> at *11 n.3 ("South Carolina law makes it unlawful to telephone or electronically contact another repeatedly, whether or not conversation ensues, for the purpose of annoying or harassing another person or his family."

---

[22] (...continued)
455(b)(5) since he is not within the third degree of kinship, reasonable men might well question his impartiality <u>where a close personal relationship exists between the two</u>." (emphasis added)).

(citing S.C. Code § 16-17-430(A)(3))).[23]  This Court should reach

the same conclusion as to Plaintiff's instant false arrest claim.[24]

Similarly, again as the recommendation in the parallel case in

the District of South Carolina noted:

> Plaintiff claims that the charge for unlawful use of a
> telephone "was resolved in her favor" on October 6, 2010.
> However, [the] [d]efendants allegedly "continued efforts
> to bring that false charge to trial until July 2012 and
> March 2013."  "[I]t is not entirely clear whether the
> Constitution recognizes a separate constitutional right
> to be free from malicious prosecution." Snider v. Seung
> Lee, 584 F.3d 193, 199 (4th Cir. 2009). However, to the
> extent such right exists, a plaintiff must demonstrate
> seizure "'pursuant to legal process that was not
> supported by probable cause and that the criminal
> proceedings have terminated in [her] favor.'" Durham v.
> Horner, 690 F.3d 183, 188 (4th Cir. 2012) (quoting
> Burrell v. Virginia, 395 F.3d 508, 514 (4th Cir. 2005)).

---

[23] The Complaint mistakenly cites S.C. Code § 16-17-340 (which
does not exist) as the statute criminalizing unlawful use of a
telephone.  (See Docket Entry 2 at 38, 50.)

[24] To the extent the Complaint predicates the instant false
arrest claim on the fact that Sergeant Auld arrested Plaintiff
without a warrant for a misdemeanor he did not witness (see Docket
Entry 2 at 33), it fails as a matter of law, see Street, 492 F.2d
at 372 ("We do not think the [F]ourth [A]mendment should now be
interpreted to prohibit warrantless arrests for misdemeanors
committed outside an officer's presence.  The difference between
felonies and misdemeanors is no longer as significant as it was at
common law."); see also Devenpeck v. Alford, 543 U.S. 146, 152
(2004) ("[A] warrantless arrest by a law officer is reasonable
under the Fourth Amendment where there is probable cause to believe
that a criminal offense has been or is being committed." (emphasis
added)).  Nor, given the Complaint's concession that, "[o]n 6
October 2010, the 'unlawful use of telephone' charge was resolved
in [Plaintiff's] favor" (Docket Entry 2 at 50) and its lack of
factual matter showing any imminent risk of arrest (see id. at 32-
50), does she have standing for her effort to obtain a judgment
declaring unlawful (or enjoining enforcement of) South Carolina's
telephone misuse law (see id.).  See O'Shea, 414 U.S. at 497-98;
Srivastava, 12 F. App'x at 372; Mendy, 2014 WL 574599, at *5.

> As discussed above, Plaintiff fails to demonstrate an unlawful arrest by Sgt. Auld [i.e., the absence of probable cause]. . . . Thus, Plaintiff's malicious prosecution claims are also subject to summary dismissal.

Assa'ad-Faltas, 2013 U.S. Dist. LEXIS 188115, at *12-13 (internal brackets and some internal citations and quotation marks omitted).

That analysis applies equally here and should lead to dismissal under Section 1915(e)(2)(B).[25]  Further, the section of the Complaint devoted to the unlawful use of a telephone charge does not allege any facts showing any "continued efforts to bring [Plaintiff] to trial until July 2012 and March 2013" (Docket Entry 2 at 4).  (See id. at 32-50.)[26]  That circumstance also defeats any such claim.  Iqbal, 556 U.S. at 678 (ruling that, to state a claim, a complaint must "contain sufficient factual matter").

---

[25] Additionally, although the Complaint alleges that the "false charges of unlawful use of telephone . . . were nol prossed WITHOUT leave to reopen on 6 October 2010" (Docket Entry 2 at 25 (capitalization as in original) (internal quotation marks omitted)), "[c]ourts have held that a simple, unexplained nolle prosequi . . . does not satisfy the favorable termination requirement," Hewitt v. Garrison, C/A No. 6:12-3403-TMC, 2013 WL 6654237, at *2 (D.S.C. Dec. 17, 2013) (unpublished); accord DiFronzo v. Chiovero, 406 F. App'x 605, 609 (3d Cir. 2011).

[26] Moreover, the Complaint elsewhere indicates that the "continued efforts to bring [Plaintiff] to trial" (Docket Entry 2 at 4) actually consisted only of the municipal court sending notices by "mistake" (id. at 25).  Such allegations cannot establish a constitutional violation because "the Constitution does not guarantee due care on the part of state officials," County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998); see also Brack v. Jones, No. 5:12CT3088FL, 2014 WL 773492, at *3 (E.D.N.C. Feb. 25, 2014) (unpublished) ("[A]t most, [the] plaintiff's allegations suggest negligence, which is not actionable pursuant to § 1983.").

Finally, the instant claim(s) feature(s) "allegations that are fanciful, fantastic, and delusional." Denton, 504 U.S. at 32-33 (internal citations and quotation marks omitted).  For example:

1) "[t]he specific false arrest of [Plaintiff] on 12 December 2009 on [a] false charge of 'unlawful use of a telephone' was contrived by all individualy-suedl [sic] [D]efendants to revoke [Plaintiff's] bond [related to her arrest for harassment on December 2, 2009] and return her to incarceration to prevent her effective pro se research leading to self-exoneration from the two false harassment charges and to leave her apartment open to looting by Defendants" (Docket Entry 2 at 32-33);

2) "[a]fter [Plaintiff] . . . was allowed to return briefly to her apartment in the late afternoon of 4 December 2009, after her release from detention, she found . . . her passports missing [and] . . . later saw evidence that [her landlord's attorney] had taken them" (id. at 40);

3) "[a]fter [Plaintiff] was released again on Sunday, 13 December 2009, and was allowed to return to her Byron [Road] apartment in the evening of Monday, 14 December 2009, with the escort of [a] CPD [o]fficer [], [Plaintiff] found that her two passports . . . had been replaced in her apartment evidently by whomever had initially taken them" (id. at 49); and

4) "[the attorneys for Plaintiff's landlord] had conspired to effect [Plaintiff's] 12 December 2009 arrest to conceal their theft

of her passports from her Byron [Road] Apartment to which [one of
the attorneys] had been admitted illeally [sic] by CPD after
[Plaintiff's] 2 December 2009 false arrest" (id. at 49-50).

Accordingly, the Court also should dismiss the instant
claim(s) for false arrest on December 12, 2009, and related efforts
to prosecute in July 2012 and March 2013, as factually frivolous.
See Nasim, 64 F.3d at 954 (ruling that Section 1915(e)(2)(B)
permits courts "to apply common sense [and] reject the fantastic").

### D. Trespassing Arrest on March 23, 2011, and Continued Denial of Access to Public Buildings

The third "claim" in the Complaint relates to "Plaintiff's 23
March 2011 false arrest by RCSD on [a] false charge of 'trespass'
[and] . . . the continued unjustified denial of [her] access to the
[RCJC] and to the CMC building . . . ." (Docket Entry 2 at 4
(internal bold omitted) (emphasis added); see also id. at 50-62
(setting out claim under heading "The False 23 March 2011 Arrest,
Imprisonment, and Deliberate Indifference to Medical Needs").)[27]
As shown in Section III, in Assa'ad-Faltas, 2013 WL 5273813, the
United States District Court for the District of South Carolina

_____

[27] Although the title of the section of Plaintiff's Complaint
addressing her third "claim" makes reference to "Deliberate
Indifference to Medical Needs" (Docket Entry 2 at 50), the
introduction to the Complaint does not include any such claim in
its list of the claims presented for adjudication by this Court
(id. at 3-4) and, further, that introduction explicitly states that
any claim not appearing on that list is "expressly reserved for
other complaints" (id. at 4). Accordingly, the ensuing discussion
will not address any possible claim for deliberate indifference.

dismissed the same false arrest and denial of access claim(s) and, in Assa'ad-Faltas, No. 3:12CV2991, Docket Entry 62, that court dismissed an identical false arrest claim, after "find[ing] it apparent and clear from the face of the complaint that [P]laintiff fail[ed] to state a claim on which relief may be granted, and, in addition, that [her] allegations . . . [we]re frivolous." This Court should find similarly and should dismiss the instant claim(s) under Section 1915(e)(2)(B).

To begin, Plaintiff's Complaint states that the "false trespass charge was dismissed on or about 20 June 2011" (Docket Entry 2 at 58); even granting Plaintiff the benefit of accrual on that date,[28] she missed the three-year limitations deadline, see Heyward, 1998 WL 841494, at *3; Brooks, 85 F.3d at 181, by waiting to assert the instant false arrest claim (which arises under Section 1983, see Cooper, 735 F.3d at 158; Rogers, 249 F.3d at 294)[29] until August 13, 2014 (see Docket Entry 2 at 1). As a result, the Court should dismiss Plaintiff's instant false arrest claim for legal frivolousness. See Nasim, 64 F.3d at 955-56.[30]

---

[28] The Supreme Court has made clear that the limitations period for any such false arrest claim, in fact, commenced before the date of dismissal. Wallace, 549 U.S. at 388-94.

[29] The Complaint explicitly identifies the Constitution and Section 1983 as bases for its claims. (See Docket Entry 2 at 4.)

[30] The discussion above notes that, on two earlier occasions, Plaintiff presented this same false arrest claim in the District of South Carolina, resulting (both times) in dismissals without
(continued...)

Further, the Complaint fails to state a claim for false arrest on March 23, 2011.  According to the Complaint:

1) on April 1, 2010, a circuit court judge in Richland County issued an order "limiting [Plaintiff's] access . . . to [the RCJC] to 2:00 - 4:00 pm on business days . . . and to her scheduled trials and hearings, and threatening 'contempt of court punishable by a fine or incarceration' for violations" (Docket Entry 2 at 55);

2) on January 18, 2011, RCSD deputies gave Plaintiff a "notice" for the stated purpose of "emphasiz[ing] the 1 April 2010 'Order'" (id. at 56);

3) "[o]n 23 March 2011, [Plaintiff] went to [the RCJC] . . . arriv[ing] close to the 4:00 pm limit" (id. at 57);

4) Plaintiff "soon realized [that] phone calls were being made to arrest her . . . so she left" (id.);

5) before Plaintiff could get away, an RCSD deputy "arrested [her] [and] took her to the basement of the [RCJC] . . . [where she] invited them to report to [the judge who issued the April 1, 2010 Order] and let him decide for himself whether he want[ed] to charge her for contempt" (id.);

---

[30] (...continued)
prejudice that made no reference to tolling.  Assa'ad-Faltas, 2013 WL 5273813, at *3; Assa'ad-Faltas, No. 3:12CV2991, Docket Entry 62 at 5.  According to the Complaint, the statute of limitations for her instant false arrest claim was "tolled by [those prior] dismissal[s] *wihtout* [sic] prejudice."  (Docket Entry 2 at 5 (italics in original).)  That position lacks merit.  See Gallipeau, 2014 WL 2613178, at *4; Williams, 2008 WL 2277544, at *3.

59

6) RCSD deputies transported Plaintiff to a detention center "[a]nd only *after* [she] was booked in [the detention center] did [D]efendants get a warrant for 'trespass' from the [detention center's] resident magistrate" (id. (italics in original)); and

7) "[w]hen that case came for trial, [the presiding magistrate] noted that there is no [South Carolina] crime of trespass on public buildings during business hours" (id. at 58).

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (emphasis added)."); Street, 492 F.2d at 371 ("There is no [Fourth Amendment] prohibition against arrests for investigations where probable cause exists."). Under South Carolina law, "[c]ontempt of [c]ourt is a specific criminal offense[.]" South Carolina v. Weinberg, 92 S.E.2d 842, 845, 229 S.C. 286, 292 (1956), rev'd in part on other grounds, South Carolina v. Kennerly, 524 S.E.2d 837, 839, 337 S.C. 617, 621 (1999); see also State v. Bevilacqua, 447 S.E.2d 213, 217, 316 S.C. 122, 129 (S.C. Ct. App. 1994) ("It is well settled that contempt results from willful disobedience of a court order[.]"); S.C. Code § 14-5-320 ("The circuit court may punish by fine or imprisonment, at the discretion of the court, all contempts of authority in any cause or hearing before the same."). The factual allegations of the Complaint establish that, at the time of Plaintiff's arrest on

March 23, 2011, the arresting RCSD deputies possessed probable cause[31] to believe that she had committed the criminal offense of contempt by knowingly violating a court order. Indeed, the Complaint states that Plaintiff acknowledged as much to the arresting deputies at the time of her arrest. As a result, her instant false arrest claim fails as a matter of law.[32]

The Complaint also lacks factual matter showing any "continued unjustified denial of Plaintiff's access to the [RCJC] and to the CMC building" (Docket Entry 2 at 4). (See id. at 50-62.) Accordingly, any claim in that regard cannot proceed. See Iqbal,

---

[31] "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt. And this means less than evidence which would justify condemnation or conviction, . . . [but] more than bare suspicion: Probable cause exists where the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175-76 (1949) (internal citations, parentheses, and quotation marks omitted); see also Los Angeles Cnty., Cal. v. Rettle, 550 U.S. 609, 616 (2007) (describing "probable cause" as "a standard well short of absolute certainty").

[32] The allegation that RCSD deputies arrested Plaintiff for trespassing, rather than for contempt, matters not. See Devenpeck, 543 U.S. at 153 ("Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause. As we have repeatedly explained, the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." (internal citations and quotation marks omitted)).

556 U.S. at 678. The absence of non-conclusory allegations establishing that Plaintiff faces ongoing, unconstitutional exclusion from any public buildings also deprives her of standing to seek (and this Court of jurisdiction to award) injunctive relief on that front (as the Complaint requests (see Docket Entry 2 at 62). See generally City of L.A. v. Lyons, 461 U.S. 95, 102 (1983) (observing that, to make out standing necessary for federal court to possess jurisdiction, a plaintiff's allegations of "injury or threat of injury must be both real and immediate, not conjectural or hypothetical" (internal quotation marks omitted)). Likewise, the Court cannot grant the requests that it enjoin certain of the Richland County Sheriff's detainee practices and/or aspects of a circuit court judge's commentary from the bench (see Docket Entry 2 at 62) because said requests stray too far afield from the substance of the instant false arrest and denial of access claims, see, e.g., PBM Prods., 639 F.3d at 128; Hayes, 10 F.3d at 217.

As a final matter, Plaintiff's instant claim(s) involve factually frivolous allegations, such as:

1) "[Plaintiff] viewed [the April 1, 2010] [O]rder as a trap to call her cases for trial without notice" (Docket Entry 2 at 55);

2) "[Richland County's Clerk of Court] instructed her staff to not timely or at all serve notices on [Plaintiff]" (id.);

3) "[supervisory RCSD deputies] urge[d] their subordinates to provoke [Plaintiff] in the hope of justifying a new arrest" (id.);

4) Plaintiff's arrest on March 23, 2011 "was meant to . . . intimidate her to plead guilty to charges of which she is innocent or [to] try her in her absence and wrongly convict her [as well as to] make her and her family suffer because they are highly educated immigrants" (id. at 58); and

5) a circuit court judge's law clerk "signed up with [a law firm working for Plaintiff's landlord] and abused his office to render services to that firm by sabotaging [Plaintiff's] civil case against [her landlord] . . . [and Plaintiff's] motion [in one of her criminal cases] to end all travel restrictions on her so she could see her then-hospitalized mother in Ohio" (id.).

The fantastic character of such allegations affords another basis for dismissal of the instant claim(s) under Section 1915(e)(2)(B). See Nasim, 64 F.3d at 954.

## VI.  Conclusion

Plaintiff's Complaint presents frivolous and malicious allegations, fails to state a claim, and names Defendants not subject to or immune from liability.  Those circumstances all require dismissal of this action under Section 1915(e)(2)(B).

This Memorandum Opinion has detailed the numerous, fundamental deficiencies of Plaintiff's Complaint, as well as her extensive, prior history of vexatious litigation, to demonstrate that a need likely exists for action against Plaintiff stronger than simply dismissal under Section 1915(e)(2)(B), particularly given that she

has expressed an intent to file more lawsuits (see Docket Entry 2 at 4, 23, 32, 50-51, 52, 54).  Most notably, "the All Writs Act, 28 U.S.C. § 1651(a) (2000), grants federal courts the authority to limit access to the courts by vexatious and repetitive litigants like [Plaintiff]."  Cromer v. Kraft Foods N. Am., Inc., 390 F.3d 812, 817 (4th Cir. 2004).  The Fourth Circuit, however, has demanded careful assessment of various factors prior to imposition of an injunction limiting a plaintiff's right to file federal lawsuits, "including (1) the party's history of litigation . . .; (2) whether the party had a good faith basis for pursuing the litigation . . .; (3) the extent of the burden on the courts . . .; and (4) the adequacy of alternative sanctions."  Id. at 818; see also id. (identifying contempt as an option that courts generally must consider); Fed. R. Civ. P. 11(c)(1) ("If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) [which requires a party to have a legitimate basis for a filing] has been violated, the court may impose an appropriate sanction . . . .") & (4) ("The sanction may include nonmonetary directives [and/or] an order to pay a penalty into court[.]").

This Memorandum Opinion establishes that Plaintiff has engaged in a decades-long pattern of frivolous, bad-faith litigation that has sorely taxed the federal court system.  She should consider herself on notice that any further submission of frivolous or malicious material (in this or any other case in this or any other

federal court) may result in entry of an order to show cause why she should not face sanctions, including a pre-filing injunction.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Docket Entry 1) is **GRANTED FOR THE LIMITED PURPOSE OF ALLOWING THE COURT TO CONSIDER A RECOMMENDATION OF DISMISSAL.**

**IT IS FURTHER ORDERED** that, in light of the recommendation of dismissal, Plaintiff's Motion for Leave to File Electronically (Docket Entry 4) is **DENIED.**

**IT IS RECOMMENDED** that this action be dismissed under 28 U.S.C. § 1915(e)(2)(B) as frivolous and malicious, for failure to state a claim, and due to the immunity of some Defendants.

                                    /s/ L. Patrick Auld
                                **L. Patrick Auld**
                        **United States Magistrate Judge**
September 15, 2014